Shaw, C. J.
The plaintiff, a minor under twenty-one years of age, has brought her action by her next friend, against the town of Charlestown, to recover damages for being unlawfully excluded from attending on one of the public schools, as a pupil, to be instructed. The action is founded on St. 1845, c. 214, which provides, that any child unlawfully excluded from public school instruction, in this commonwealth, shall recover damages therefor in an action on the case, brought in the name of the child, by a guardian or next friend, in any court &c. against the city or town, by whom such public school instruction is supported.
This statute was probably passed in consequence of a decision of this court a few years previously. Spear v. Cummings, 23 Pick. 224. That was an action brought by the father of children, alleged to be entitled to the benefits of a public school, against the keeper of a district town school, for refusing to receive and instruct them. The court having decided, from an inspection of the declaration, that the action would not lie, the plaintiff became nonsuit, and no facts were stated or reasons given, why the pupils were excluded. This nonsuit was confirmed, upon reasons quite satisfactory to the whole court, on a deliberate revision. Without considering whether, upon any grounds, and if any what, and by whom, a pupil could be excluded from thq school, the court were of opinion, that that action was misconceived; first, because the father is not the person injured and entitled to recover damage in his own right; and next, because the master, being quasi a public officer, who is employed and engaged by the town committee, to perform duties, to some extent regulated by law, is not the person to decide in the last resort, whether under given circumstances, a pupil shall be received or not; that *162 duty being vested in the general school committee of the town.
Probably the legislature were apprehensive that these important rights to school education, provided by law for all the youth of the commonwealth, at the public expense, were not provided for and guarded by adequate and practical remedies, and therefore passed the statute in question. The act manifestly proceeds on the assumption, that the child, the pupil wrongfully excluded, is the party injured; that the town, in its corporate capacity, is the body responsible for affording such instruction, and that the general and prudential committees, and the masters and teachers, are directly or indirectly the agents of the town, through whose instrumentality such instruction ought to be practically given, and for whose neglect or default, in this respect, the town should be made responsible.
That statute affords a remedy in behalf of any child wrongfully excluded from public school instruction. It leaves the question entirely open, as to what is, and what is not, a wrongful exclusion; which must depend on other provisions of law, and all considerations properly applicable to that question.
The plaintiff claiming damages in this action by force of that statute, the question is whether she has been wrongfully excluded. It appears by the bill of exceptions, that she was an inhabitant of Charlestown, of a proper age, and entitled to attend the public schools, if not rightly rejected. The notices of defence are filed and made part of the case. In the first of these specifications, the defendants gave notice that they would show, that the plaintiff’s character in regard to chastity was such, that she ought not to be allowed to remain in the public schools, and that for that reason she was excluded. In a specification subsequently filed, the defendants gave notice that they would show, that during the year 1845, and prior to December 1, the plaintiff was at unseasonable hours of the night with one John B. Nicholson &c., — specifying a continued course of open and notorious familiarities, and actual illicit intercourse, and that for hire and reward.
*163 The plaintiff objected that the facts stated in these notices, if proved, could not constitute a justification of the conduct of the defendants in excluding her from school. The presiding judge sustained this objection and ruled accordingly This is the question we have to consider.
The argument for the plaintiff is, that it is the right of every child between seven and sixteen to go to the public school for instruction; that this right is absolute and indefeasible; that if a young person, male or female, sustains a bad moral character, and is guilty of gross acts of notorious misconduct, out of school, provided there is no violation of the rules of the school and no misconduct in school, such pupil cannot be rightfully excluded for any cause, and of course every exclusion must be wrongful. If such was the intent of the legislature, it is strange that they should have used such a significant qualifying term as that of “ unlawfully,” implying that there might be a lawful exclusion, from which no such consequence would follow.
On general principles, it would seem strange if, in the esta blishment of such a great public institution as that of the public schools, in the benefits of which the whole community has so deep and vital an interest, there were no power vested anywhere, sufficient to protect the schools thus established from the noxious influence of any one, whose presence and influence would be injurious to the whole, and subversive of the purposes manifestly contemplated by their establishment. But the court are of opinion, that the schools have not been left by the law without reasonable protection in this respect; and that a power is vested in the general school committee, or the master, with their approbation and direction, to exclude a pupil, although within the prescribed age of seven and sixteen, for good and sufficient cause; and that the notorious immoral propensities, practices and habits of any one, claiming admission as a pupil, if proved to the satisfaction of the committee, do constitute a good and sufficient cause for such exclusion.
This power is rather to be drawn from the general provisions sf the law on this subject, and their application to the subject- *164 matter, than from any specific enactment. Such authority must, from the necessity of the case, be conferred in general terms. It would be curious, but not necessary to our present purpose, to examine into the early legislation, and see from what small beginnings, and by what slow but steady progress, the system of public instruction has increased to its present magnitude, maintained at great expense, cherished with the most anxious solicitude, and affecting the dearest social and political interests of the state. But it is sufficient to take the law as it now exists.
In the first place, it is obvious, indeed it is strenuously argued in behalf of the plaintiff, that these schools are established for the benefit of all the inhabitants. The enjoyment of this benefit is therefore a common, not an exclusive personal right; then, like other common rights, that of way for instance, it must be exercised under such limitations and restrictions, that it shall not interfere with the equal and coextensive rights of others. Take the case of contagious disease: can it be doubted that the presence of a pupil infected could be lawfully prohibited, not for any fault or crime, or wrong conduct, but simply because his attempt to insist on his right to attend, under such circumstances, would be dangerous and noxious, and1 so an interruption of the equal and common right? It seems to be admitted; if not, it could hardly be questioned, that for misconduct in school, for disobedience to its reasonable regulations, a pupil may be excluded. Why so ? There is no express provision in the law authorizing such exclusion; it results by necessary implication from the provisions of law, requiring good discipline. It proves that the right to attend is not absolute and unqualified, but one to be enjoyed by all under reasonable conditions.
But it is argued, that though good discipline may be maintained within the school, yet the master and the committee have no right to look beyond the walls of the school, to take notice of the conduct of its pupils. We cannot perceive the force of this distinction, pressed to the extent to which the argument attempts to carry it. Truancy is a fault, commit *165 ted wholly beyond the precincts of the school; yet no example is more contaminating, no maleconduct more subversive of discipline. May not an incorrigible truant be expelled, not as a punishment merely, but as a protection to others from injurious example and influence. Children of both sexes, and of various ages, capacities and susceptibilities, must be thrown together on their way to and from school, at their amusements out of school hours, under such circumstances as to exert a powerful influence on each other.
The power, in the last resort, we think is vested in the school committee. By Rev. Sts. c. 23, § 10, the inhabitants of every town are required to choose by ballot a school committee, who shall have the general charge and superintendence of all the public schools in such town. In some respects, then: duties are specially prescribed; in others they result from the general power of superintendence and visitation. When it becomes necessary to pass upon the qualifications of scholars, as where one grammar school is to be kept for the use of the whole town, the committee are to do it. They are to decide on the qualifications of teachers, male and female, to decide what books shall be used, to visit and examine the schools frequently, and to make report to the town, and returns to the board of education. Before the ages were fixed by law, the school committee decided at what age scholars might be received, and to what age they might continue. It is made their duty to exert their influence and use their best endeavors that the youth of their towns shall regularly attend the schools.
It may be urged that if this power exists in school committees, they may exercise it arbitrarily and unjustly; but the answer is, that such a power must exist somewhere, that all power conferred for good may be abused to wrong uses; but this power is intrusted to bodies under all the responsibilities, which can bind any public officers to the faithful performance of duty in such a trust. They are chosen by their fellow-citizens, for their supposed capacity, impartiality and fitness, and they are liable, to be removed by the same constituents. Their acts are not done in a corner; the performance of their duties *166 is open and public, and they make returns to those fullv competent to judge of the propriety of their conduct.
Supposing, then, that the school-committee have power, upon a proper occasion, to exclude a pupil, we can have no doubt, that open, gross immorality, in a female, manifested by licentious propensities, language, manners and habits, amounting even to actual prostitution, although not manifested in the school, are a sufficient ground on which to prohibit her attending the public school.
It was stated in the argument, that a good moral character is in terms required by law of instructors, but not of pupils ; hence an argument was drawn, that however depraved in sentiment and vicious in conduct, out of school, the pupil may be, it is no good ground for exclusion.
The law indeed does not require all pupils to be of good moral character; it presupposes that their characters are not yet formed, but that they are in a plastic state of formation, in which it is important that every influence brought to bear on them should be of the highest toned morality. The law, itself, Rev. Sts. c. 23, \ 13, provides that all teachers shall be of good moral character. It makes it the duty, § 7, of all preceptors, teachers and instructors of youth to exert their best endeavors to impress on the minds of the children and youth committed to their care and instruction, the principles of piety, justice, and a sacred regard to truth, benevolence, sobriety, chastity, and those other virtues which are the ornament of human society, &c. The whole passage is eminently instructive. But it may be said that this passage, setting forth certain moral sentiments and obligations, though very true, and though they commend themselves to every man’s sense of duty and propriety, yet affords no practical rule, and cannot therefore have the force of law. The same thing may be said of the beautiful passage, constituting the eighteenth article of the declaration of rights, in the constitution of Massachusetts, enunciating and setting forth the moral qualifications for office, and the moral duties both of electors and lawgivers. They do not indeed prescribe any practical rule, upon which any action or criminal complaint could be founded. But they *167 do more; they infuse the purest and most elevated principles of moral and social duty into the minds and consciences both of those who make, and those who administer, the laws. The duty of legislators, and of many public officers, is secured by oath; such oath binds them to the observance of these princi pies. And the sense of duty in every well-constituted mind would bind the conscience as effectually as an oath.
What then, it may be asked, is the legal efficacy of such enumeration of moral duties amongst legal enactments. We think it is obvious and manifest: it may supply a means of interpretation of provisions, which are doubtful or equivocal, or give significancy, force and meaning to enactments, which, from the necessity of the case, are concise and general. Under the light afforded by these means of exposition, we think the whole tone and tenor of the laws demonstrate, that it was the intention of the legislature to make the public schools a system of moral training, as well as seminaries of learning. If such is the manifest intention and purpose of the schools, then it is as necessary, in the unreserved intercourse of pupils of the same school, as well without as within its precincts, to preserve the pure-minded, ingenuous and unsuspecting children of both sexes, from the contaminating influence of those of depraved sentiments and vicious propensities and habits, as from those infected with contagious disease.
It must be considered that the power of all teachers of schools, and of the committees or other managers under whose direction they act, is a parental authority, to be exercised for the best good of the whole. It was said in the argument, that if the plaintiff bad violated the laws of the country, being of an age to be responsible for her conduct, she was liable to be prosecuted and punished, before the tribunals of justice. Suppose she was so liable, she was not the less unfit to be the member of a public school. The two powers are vested and are to be exercised diverso intuitu; the one to punish offences against the law, the other to maintain the purity and discipline of the school, and secure the great public objects, for which it was established. The court are therefore satisfied, that upon proof of the facts, tendered by the defendants, the *168 school committee, were justified in excluding the plaintiff, and that such exclusion was not wrongful. This proof having been rejected, the verdict must be set aside, and a new trial had.